ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| URS Federal Services, Inc. | ) | ASBCA No. 61227 |
| | ) | |
| Under Contract No. W74V8H-04-D-0023 | ) | |

APPEARANCES FOR THE APPELLANT:      Terry L. Elling, Esq.
     Gregory R. Hallmark, Esq.
      Holland & Knight LLP
      Tysons, VA

APPEARANCES FOR THE GOVERNMENT:      Arthur M. Taylor, Esq.
      DCMA Chief Trial Attorney
     Robert L. Duecaster, Esq.
      Trial Attorney
      Defense Contract Management Agency
      Chantilly, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON APPELLANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT

URS Federal Services, Inc. (URS or appellant) appeals a contracting officer's (CO's) final decision asserting a government claim to recover allegedly unallowable direct and indirect costs paid to appellant. Appellant moves for partial summary judgment on the portion of its appeal related to the direct costs, arguing that that part of the claim is time barred by the Contract Disputes Act's (CDA) six-year statute of limitations. Appellant also moves for summary judgment on its entire appeal based on the doctrine of laches. We partially grant and deny the motions as discussed below.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

Unless otherwise noted, the following facts are undisputed or uncontroverted.

1. On September 27, 2004, the U.S. Army Medical Research Acquisition Activity issued Task Order B303 under Contract No. W74V8H-04-D-0023 (the Contract) to PlanetGov Inc. Apptis, Inc., subsequently acquired PlanetGov Inc., and a modification was issued updating the contractor's name. URS is the successor in interest to Apptis, Inc. (App. SUMF[1] ¶ 1, ex. A-1, ex. A-2 at URS-001222) The contract included Federal

---

[1] The government accepted and incorporated appellant's statement of undisputed material facts, dated August 13, 2018 (*see* gov't opp'n at 2).

Acquisition Regulation (FAR) 52.244-2, SUBCONTRACTS (AUG 1998), which requires contractors to obtain contracting officer approval to subcontract if the contractor does not have an approved purchasing system (R4, tab 8 at G-000128, R4, tab 9 at G-000148).

2. The task order called for a proof of concept for a commercial off-the-shelf medical event reporting system (app. SUMF ¶ 2, ex. A-1 at URS-001229). URS's proposal for the task order noted its intention to utilize Northrop Grumman as a subcontractor (app. SUMF ¶ 4, ex. A-4 at DCMA.00339, .00342, .00358-59).

3. During performance of the task order in FY 2006, URS submitted periodic invoices for reimbursement of its direct and indirect costs. Subcontractor costs relating to Northrop Grumman and SAIC were included on these invoices. The government paid each invoice. (App. SUMF ¶ 9, ex. A-9 at URS-000833-34, ex. A-10 at URS-001032 33, ex. A-11 at URS-001063-64)

4. On July 25, 2008, URS submitted its final indirect cost rate proposal for FY 2006 (app. SUMF ¶ 10; R4, tab 8 at G-000088). By letter dated April 19, 2012, URS withdrew its proposal (gov't SUMF ¶ 23, R4, tab 8 at G-000088, *see* ex. G-1). On June 22, 2012, URS resubmitted its final indirect cost rate proposal for FY 2006 (app. SUMF ¶ 12; R4, tab 8 at G-000088).

5. On April 13, 2015, the Defense Contract Audit Agency (DCAA) issued an audit report on URS's June 22, 2012, final indirect cost rate proposal for FY 2006 (app. SUMF ¶ 12; R4, tab 8 at G-000088).

6. By letter dated April 6, 2017, the administrative contracting officer (ACO) issued a contracting officer's final decision (COFD) asserting a government claim to recover certain allegedly unallowable direct and indirect costs in a total amount of $784,369. The bulk of the government's claim was for $698,685 in allegedly unallowable direct subcontractor costs. The COFD alleged that URS was in noncompliance with FAR 31.201-2, Determining Allowability, because it failed to produce adequate documentation that it had received approval to subcontract under FAR 52.244-2, thus violating FAR 31.201-2(a), and also failed to produce adequate documentation to confirm it had incurred the costs and that they were allocable to the contract, thus violating FAR 31.201-2(d). (App. SUMF ¶¶ 13-14; R4, tab 9 at G-000141, G-000148)

7. On June 19, 2017, appellant filed a timely notice of appeal with the Board, which the Board docketed as ASBCA No. 61227.

2

## DECISION

Appellant initially filed a motion for partial summary judgment regarding the ACO's disallowance of $698,685 in direct subcontractor costs. Appellant subsequently submitted a brief supplementing its motion for partial summary judgment, and also moving for summary judgment on the entirety of the appeal based on the doctrine of laches.

### I. Standard of Review

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine issue of material fact is one that is outcome determinative. *Liberty Lobby*, 477 U.S. at 248. If the non-moving party carries the burden of proof at trial for elements of its case and fails to provide such proof, the moving party is entitled to summary judgment. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). In deciding summary judgment motions we draw all reasonable inferences in favor of the non-movant; we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255.

### II. Appellant's Motion for Partial Summary Judgment

The CDA provides that "[e]ach claim by...the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). A claim accrues "when all events, that fix the alleged liability of...the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201. The events fixing liability "should have been known" when they occurred unless they were either concealed or inherently unknowable at the time. *Alion Sci. & Tech. Corp.*, ASBCA No. 58992, 15-1 BCA ¶ 36,168 at 176,489 (citing *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017). Only facts that could not reasonably be known by the claimant postpone claim accrual. *Id.* (citing *United States v. Commodities Export Co.*, 972 F.2d 1266, 1272 (Fed. Cir. 1992)).

Failure to meet a statute of limitations is an affirmative defense, for which appellant bears the burden of proof. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,823 (citing FED. R. CIV. P. 8(c); *Bridgestone/Firestone Research, Inc. v. Automobile Club de L'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001)).

3

Appellant maintains that the government's claim for $698,685 in direct subcontractor costs is time-barred by the CDA's six-year statute of limitations because the claim accrued in 2006 yet the government failed to assert the claim until 2017 (app. mot. at 9-10). Appellant's primary contention is that the government had actual knowledge of its use of subcontractors Northrop Grumman and SAIC in 2006 when the government paid appellant's invoices that included subcontractor costs (*id.* at 13; SOF ¶ 3).

The government contends that the earliest possible date that its claim could have accrued was June 22, 2012, which is the date appellant resubmitted its final indirect cost rate proposal for FY 2006 (gov't opp'n at 4; SOF ¶ 4). The government advances two bases for its claim, the first being URS's inability to prove it received contractual approval to subcontract, and the second being lack of adequate documentation showing that the costs for which it was reimbursed were in fact incurred and were allocable to the contract. Both of these bases, the government argues, became known to it only during the course of the audit, when URS's inability to provide the requested documentation became apparent. The government states, "[t]hat inability, or refusal, of Appellant to provide substantiating documents to the Government that showed payments to certain purported subcontractors were made for performance of the contract is the *legal basis* for the Government's claim." (Emphasis in original) The government maintains that appellant's failure to maintain this supporting documentation could only be apparent after it had the opportunity to examine appellant's certified final indirect cost rate proposal, which was submitted on June 22, 2012. (Gov't opp'n at 4-5; SOF ¶ 4)

We have previously considered arguments that a government claim accrued with the payment of an invoice. As we recently observed in *DRS Global Enterprise Solutions, Inc.*, ASBCA No. 61368, 18-1 BCA ¶ 37,131 at 180,697, our precedent does not allow for a blanket rule to be applied. Rather, we must consider the unique facts giving rise to when the government reasonably should have known of its claim. *Id.* at 180,697.

Here, it is clear to us that the government should have known the basis of its claim regarding noncompliance with the contract's requirement to obtain approval to subcontract in 2006. At that time, appellant submitted periodic invoices to the government that clearly and unmistakably listed substantial subcontractor costs attributed to both Northrop Grumman and SAIC. The government paid these invoices without objection. (SOF ¶ 3) Before making these payments, the government most assuredly knew whether or not it had previously approved appellant's use of a subcontractor under FAR 52.244-2.

We disagree with the government's assertion that the facts in this appeal parallel those in *DRS Global Enterprise Solutions, Inc.*, 18-1 BCA ¶ 37,131 (gov't opp'n at 7). While both appeals involve government claims made years after the payment of a

contractor's voucher or invoice, the relevant information able to be gleaned from the voucher or invoice is substantially different. In rejecting DRS's argument, we observed that the vouchers were not even in the record. *DRS Global Enterprise Solutions, Inc.*, 18-1 BCA ¶ 37,131 at 180,695. Consequently, we concluded that "DRS's sweeping statements with respect to the level of knowledge possessed by the government in 2006 are not supported by the current record." *Id.* at 180,698.

The facts of this appeal are different. Appellant's contention is relatively straightforward: its invoices from 2006 provided the government actual knowledge that appellant was using subcontractors Northrop Grumman and SAIC. Also, unlike *DRS Global Enterprise Solutions, Inc.*, the record in this appeal includes copies of appellant's invoices from 2006. Review of these documents reveals multiple entries for Northrop Grumman and SAIC, which are clearly labeled as subcontractor costs. (SOF ¶ 3) The government did not need any additional information, outside of the invoices themselves, to recognize that appellant utilized a subcontractor. Moreover, all facts regarding whether the government had previously approved appellant's use of a subcontractor under FAR 52.244-2 were knowable at that time.

Therefore, we grant summary judgment to appellant as to that portion of the government's claim that is premised on alleged noncompliance with the contractual requirement to obtain approval to subcontract, finding that this portion of the government's claim accrued in 2006.

However, matters are not so clear as to the second basis for the government's claim that URS's direct subcontract costs are unallowable. The government argues that appellant's failure to maintain documentation that it incurred the costs in question and that they were allocable to the contract could only be apparent after it had the opportunity to examine appellant's certified final indirect cost rate proposal, which was submitted on June 22, 2012. (Gov't opp'n at 4; SOF ¶ 4)

Appellant argues that this portion of the government's claim also accrued in 2006 because at that time the government had an obligation to inspect and timely inform appellant of any issues relating to contractual requirements to maintain records (app. reply br. at 6). We are not convinced that this argument resolves this matter, because it is immaterial whether the government was under an obligation to notify appellant of any issues in 2006. The real issue here is: which documents was URS required to maintain, and for how long? The parties' briefs do not answer this question. Nor does the answer appear in the record.

As an example, the government may defeat the proposition that its claim based on lack of adequate documentation accrued in 2006 if record evidence were to show that there then existed a contractual requirement that such documentation be retained not just for the purpose of claiming payment under the contract, but also for the purpose

5

of audit of indirect cost rates many years after payment had been made on those costs. Likewise, appellant could introduce evidence that a shorter retention period was the only reasonable expectation in 2006, which would tend to support the conclusion that the government's claim accrued then. Based on the record before us, we cannot find that appellant has met its burden of proof to show that it is entitled to summary judgment as a matter of law on this portion of the government's claim. Thus, we deny appellant's motion for partial summary judgment on the government's claim for direct subcontractor costs to the extent it is based on inadequate documentation under FAR 31.201-2(d).

### III.  Appellant's Motion for Summary Judgment

Appellant also moves for summary judgment on the entirety of its appeal based on the doctrine of laches. "Laches is an equitable doctrine under which relief is denied to one who unreasonably and inexcusably delays in the assertion of a claim, thereby causing injury or prejudice to the adverse party." *Delco Systems Operations, Delco Electronics Corp.*, ASBCA No. 37097, 90-3 BCA ¶ 23,245 at 116,632 (citing *S.E.R., Jobs For Progress, Inc. v. United States*, 759 F.2d 1, 5 (Fed. Cir. 1985)). "There is no presumption of prejudice, and the passage of time alone does not constitute laches." *Anis Avasta Construction Co.*, ASBCA No. 61107, 18-1 BCA ¶ 37,036 at 180,317 (citing *Mediax Interactive Technologies, Inc.*, ASBCA No. 43961, 93-3 BCA ¶ 26,071 at 129,582). "[T]he burden of proving prejudice from the late assertion of claims is on the party defending against such claims." *Rudolf Bieraeugel, Stahl-und Metallbau, Gesellschaft mit beschraenkter Haftung*, ASBCA No. 47145, 95-1 BCA ¶ 27,536 at 137,220.

Appellant alleges that due to the government's delay in pursuing its claim, the government has directly and adversely affected appellant's ability to produce complete documentation relevant to its defense (app. supp. mot. at 4). Appellant notes that during contract performance and the DCAA audit, URS underwent several corporate transactions in the nature of an acquisition or merger (app. supp. mot. at 5; SOF ¶ 1). Appellant argues that this has resulted in a loss of records and knowledge within appellant's organization (app. supp. mot. at 5). In support of its motion, appellant submits a declaration from its Vice President of Government Accounting. The declaration asserts that during the DCAA audit, URS provided all relevant documents within its possession. It also states that many of the former Apptis employees with knowledge relevant to the contract left the company after its acquisition by URS in 2011. (App. supp. mot., ex. A-1)

The government maintains that despite appellant's allegations, appellant failed to make any representation that additional documentation ever existed or that the government's delay in asserting its claim caused appellant to be adversely affected (gov't opp'n at 9).

6

We do not believe this matter is ripe for decision on summary judgment. Material facts are in dispute regarding the extent to which, if any, the government's delay in asserting its claim prejudiced appellant's ability to produce documentation. Accordingly, appellant's motion for summary judgment based on laches is denied.

## CONCLUSION

Appellant's motion for partial summary judgment is granted as to the portion of the government's claim based on lack of subcontract approval and denied as to the portion of the government's claim based on inadequate documentation. Appellant's motion for summary judgment based on the doctrine of laches is denied.

Date: September 3, 2019

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61227, Appeal of URS Federal Services, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

7